# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Fort Lauderdale Division

0:13-CV-61280-RSR (Rosenbaum/_____)

In re:

    Leroy A Campbell,

        Debtor.

_____/

ON APPEAL FORM UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Case Number 12-35903-JKO
Chapter 13 Proceeding

IN RE: LEROY A. CAMPBELL

APPELLANT/CREDITOR STONEBRIDGE GARDENS, SECTION TWO,
CONDOMINIUM ASSOCIATION, INC.
INITIAL BRIEF

Gian Ratnapala, Esq.
Florida Bar No. 97342
Counsel for Appellant
PeytonBolin, PL
4758 West Commercial Boulevard
Fort Lauderdale, Florida 33319
Telephone : (954) 316-1339
Facsimile : (954) 727-5667
gian@peytonbolin.com
bankruptcy@peytonbolin.com

## CERTIFICATE OF INTERESTED PERSONS

The Appellant, Stonebridge Gardens, Section Two, Condominium Association, Inc., submits this list, which includes the bankruptcy judge, and all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this review:

1. Stonebridge Garndes, Section Two, Condominium Association, Inc. – Creditor/Appellant
2. Leroy A. Campbell – Debtor/Appellee
3. The Honorable John K. Olson – Bankruptcy Judge
4. Robin R. Weiner, Esq. – Chapter 13 Trustee
5. Gian C. Ratnapala, Esq. – Attorney for Creditor/Appellant
6. Manny Singh, Esq. – Attorney for Debtor/Appellee

## CORPORATE DISCLOSURE STATEMENT

The Appellant, Stonebridge Gardens, Section Two, Condominium Association, Inc., a nongovernmental corporate entity in the above listed civil action, does not have any parent corporation and publicly held corporation that owns 10% or more of its stock.

## STATEMENT REQUESTING ORAL ARGUMENT

Pursuant to Local Rule 87.4(f), the Appellant, Stonebridge Gardens, Section Two, Condominium Association, Inc., hereby requests oral argument.

## TABLE OF CONTENTS

Certificate of Interested Persons ................................................................................................ i

Corporate Disclosure Statement ................................................................................................ i

Statement Requesting Oral Argument ....................................................................................... i

Table of Contents ...................................................................................................................... ii

Table of Authorities ................................................................................................................. iii

    Cases ............................................................................................................................ iii

    Statutes ........................................................................................................................ iii

    Rules ........................................................................................................................... iv

Jurisdictional Statement ............................................................................................................ 1

Issues Presented ........................................................................................................................ 1

Standard Review ....................................................................................................................... 1

Statement of The Case and Facts .............................................................................................. 2

Summary of the Argument ........................................................................................................ 3

    Association's Lien for Unpaid Assessments Survives Foreclosure ............................. 3

    Antimodification Provision Prevents Stripping-Off Association's Lien .................... 4

Argument .................................................................................................................................. 5

    Introduction .................................................................................................................. 5

    Association's Lien has Priority Over the First Mortgage ............................................ 6

    Stripping Off Association's Lien is Contrary to the Antimodification ....................... 9

    Public Policy Supports Antimodification .................................................................. 11

Conclusion .............................................................................................................................. 12

Certificate of Service .............................................................................................................. 13

Service List ............................................................................................................................. 14

# TABLE OF AUTHORITIES

### CASES

*Aventura Management, LLC v. Spiaggia Ocean Condo. Ass'n, Inc.*, 105 So. 3d 637 (Fla. Dist. Ct. App. 2013) ............................................................................................................ 4, 6, 8, 9
*Butner v. United States*, 440 U.S. 48, 99 (1978) ............................................................................ 5
*Cropper Co. v. Jackson*, 63 B.R. 874 (M.D. Ga. 1986) ................................................................. 5
*In re Aliu-Otokiti*, No. 12-14850-ABB, 2013 WL 1163782 (Bankr. M.D. Fla. Mar. 19, 2013) .... 3
*In re Almeida*, No. 12-12965-ABB, 2013 WL 1163777 (Bankr. M.D. Fla. Mar. 18, 2013) .......... 3
*In re Armstrong*, No. 10-cv-1316-Orl-31, 2011 WL 768080 (M.D. Fla. Feb. 28, 2011) ............... 6
*In Re Beckley*, 210 BR 391 (M.D. Fla. 1997) ............................................................................ 5, 9
*In re Gilpin*, 479 B.R. 905 (M.D. Fla. 2011) ................................................................................. 6
*In re Gonzales*, No. 07-149688-AJC, WL 1571172 (Bankr. S.D. Fla. Apr. 20, 2010) .............. 3, 8
*In re Internat'l Pharm. & Discount II, Inc.*, 443 F.3d 767 (11th Cir.2005) ................................... 2
*In re McBride*, 473 B.R. 813 (Bankr. S.D. Ala. 2012) ................................................................. 2
*In re McTyre Grading & Pipe, Inc.*, 193 B.R. 983 (N.D. Ga. 1996) ............................................. 5
*In re Plummer*, 484 B.R. 882 (Bankr. M.D. Fla. 2013) ......................................................... 3, 6, 8
*In re Sublett*, 895 F.2d 1381 (11th Cir.1990) ................................................................................ 1
*In re Tanner*, 217 F.3d 1357 (11th Cir. 2000) ......................................................................... 6, 10
*In re Waters*, 248 B.R. 916, 919 (Bankr. M.D. Fla. 2000) .......................................................... 12
*Nobelman v. Am. Sav. Bank*, 508 U.S. 324 (1993) .................................................................. 6, 10

### STATUTES

11 U.S.C. §101(51) ......................................................................................................................... 5
11 U.S.C. §1322(b)(2) ............................................................................................................ passim
11 U.S.C. §506 ................................................................................................................................ 3
11 U.S.C. §506(a) ....................................................................................................................... 1, 5
28 U.S.C. §1334(a) ......................................................................................................................... 1
Section 718.116(1)(a), Florida Statutes ...................................................................................... 3, 6
Section 718.116(1)(b), Florida Statutes .......................................................................................... 7
Section 718.116(1)(b)1., Florida Statutes ............................................................................ 4, 5, 7, 9
Section 718.116(1)(c), Florida Statutes ....................................................................................... 3, 7
Section 718.116(1)(g), Florida Statutes .......................................................................................... 7
Section 718.116(1), Florida Statutes .............................................................................................. 8
Section 718.116(5)(a), Florida Statutes ....................................................................................... 6, 7
Section 718.116(5), Florida Statutes .............................................................................................. 3
Section 718.116, Florida Statutes ............................................................................................... 8, 9

## *R*ULES

Federal Rule of Bankruptcy Procedure 8018................................................................................ 1
Local Rule 87.4............................................................................................................................ 1
Local Rule 87.4(f)..........................................................................................................................i

## JURISDICTIONAL STATEMENT

This court has jurisdiction pursuant to 28 U.S.C. §1334(a), Federal Rule of Bankruptcy Procedure 8018, and Local Rule 87.4.

## ISSUES PRESENTED

(1) Whether the Bankruptcy Court erred when it held that Stonebridge Gardens, Section Two, Condominium Association's lien for unpaid assessments on the Debtor's homestead property is wholly unsecured and can be stripped pursuant to 11 U.S.C. §506(a), when, under Florida law, a condominium association's lien for unpaid assessments survive a foreclosure, and may be imposed in rem against a subsequent purchaser of the property—for full value of the lien against all subsequent owners except first mortgagees, and for reduced amounts if subsequent owner is the first mortgagee.

(2) Whether the Bankruptcy Court erred when it "stripped off" Stonebridge Gardens, Section Two, Condominium Association's lien for unpaid assessments on the Debtor's homestead property when it is at least undersecured under the applicable Florida law and 11 U.S.C. §1322(b)(2) prohibits modification of rights of a creditor solely secured by a debtor's homestead property within a chapter 13 plan when the practical effect of lien stripping is to impair a condominium association's right to enforce its lien for unpaid assessments against a subsequent purchaser.

## STANDARD REVIEW

In a bankruptcy appeal, the district court functions as an appellate court. *In re Sublett*, 895 F.2d 1381, 1383 (11th Cir.1990). District court reviews the bankruptcy court's decision on matters of law *de novo*, giving "[no] deference to that court's analysis and conclusions." *Id.* Findings of fact will not be reversed unless clearly erroneous, and "[t]he bankruptcy court's findings of fact are not clearly erroneous unless, in light of all the evidence, [this court is] left with the

1

definite and firm conviction that a mistake has been made." *In re Internat'l Pharm. & Discount II, Inc.*, 443 F.3d 767, 770 (11th Cir.2005).

*In re McBride*, 473 B.R. 813 (Bankr. S.D. Ala. 2012). In the case at bar, the Bankruptcy Court made a legal determination, where none of the material facts were in dispute, that the Association's lien for unpaid assessments is wholly unsecured and can be stripped off. Therefore, this Court reviews the Bankruptcy Court's order determining secured status of lien held by the Association [Doc. 2-7] *de novo*.

## STATEMENT OF THE CASE AND FACTS

The Debtor, Leroy A. Campbell (the "Debtor") filed a Petition under Chapter 13 of the United States Bankruptcy Code on October 29, 2012 [Doc. 2-1, p. 1]. The Debtor moved the Bankruptcy Court to value and determine secured status of the lien on real property located at 2846 Northwest 55 Avenue, Unit 1A, Lauderhill, Florida 33313 (the "Property") held by Stonebridge Gardens, Section Two, Condominium Association, Inc. (the "Association") [Doc. 2-2]. Debtor values the property at $27,500.00 based on the valuation by the Broward County Property Appraiser [Doc. 2-3, p. 1]. The Debtor alleges that the property is the Debtor's homestead [Doc. 2-6, p. 1]. Debtor also alleges that HSBC Bank USA, as Trustee for Citigroup Mortgage Loan Trust, Inc., serviced by Wells Fargo Home Mortgage (the "First Mortgagee"), holds a purchase money security interest first mortgage lien of $74,785.03 on the Property [Doc 2-3, p. 1]. The Association holds a statutory and contractual continuing lien on the subject property and the Association recorded a Claim of Lien (the "Claim of Lien") against the Property on August 29, 2011, in the Official Records of Broward County, Florida at book 48147 at page 583 [Doc. 2-3, p. 1].

The Association filed the Objection to the Motion to Value on November 28, 2012. [Doc. 2-4]. The Association does not dispute any of the foregoing allegations [Doc. 2-4, p. 1].

2

However, the Association contends that, under Florida law, the Association's lien for unpaid assessments is not a wholly unsecured claim even in the presence of a first mortgage whose claim exceeds the value of the property. [Doc. 2-4, pp. 2-4].

The Debtor argues that the First Mortgagee's lien exceeds the value of Property as of the Petition date, and contends that given the Association's lien is junior to the First Mortgagee's lien, it is wholly unsecured and should be "stripped off" pursuant 11 U.S.C. §506 [Doc. 2-6, pp. 3-4]. The Association maintains that its lien against the Property for unpaid assessments is superior to the First Mortgagee's lien dated July 18, 1998, by virtue of section 718.116(1)(a), Florida Statutes, and therefore should not be "stripped off" [Doc. 2-5, pp. 2-3].

The Debtor's Motion to Value and the Association's Objection to Debtor's Motion to Value came before the Bankruptcy Court for hearing on January 22, 2013 [Doc. 2-1, p. 5]. On March 31, 2013, relying primarily upon the decisions of *In re Gonzales*, No. 07-149688-AJC, WL 1571172 (Bankr. S.D. Fla. Apr. 20, 2010); *In re Plummer*, 484 B.R. 882 (Bankr. M.D. Fla. 2013); *In re Aliu-Otokiti*, No. 12-14850-ABB, 2013 WL 1163782 (Bankr. M.D. Fla. Mar. 19, 2013); and *In re Almeida*, No. 12-12965-ABB, 2013 WL 1163777 (Bankr. M.D. Fla. Mar. 18, 2013), the Court granted the Debtor's Motion to Value and denied Association's Objection to Motion to Value [Doc. 2-7]. Association subsequently filed a Notice of Appeal.

## SUMMARY OF THE ARGUMENT

### *ASSOCIATION'S LIEN FOR UNPAID ASSESSMENTS SURVIVES FORECLOSURE*

The Association's lien should not be "stripped off" because a condominium association's lien survives a foreclosure by virtue of sections 718.116(1)(c) and 718.116(5), Florida Statutes, which provide for collection of past due assessments that came due prior to a bank foreclosure sale against a condominium parcel *in rem*. If a condominium association's lien was truly subordinate to a first mortgage it should not be able to enforce any rights against the property

3

after a foreclosure of a first mortgage, and if that were the case, a condominium association would be left with no rights against the property. However, a condominium association benefits from statutory provisions that allow a condominium association debt to survive the first mortgage foreclosure and create seek the past due assessments from the subsequent, post-first mortgage foreclosure, purchaser, even though the assessments arose prior to that owner's title in the unit. Because of this statutory provision, the association's debt not only survives the first mortgage foreclosure, but may also become a lien against the property. By function of this statute, the only question is how much of the prior debt passes through to the subsequent purchaser. Section 718.116(1)(b)1., Florida Statutes (the "Safe Harbor Provision"), provides for a reduction of liability in favor of a first mortgagee that takes title through its foreclosure action; however, a condominium association may still file a Claim of Lien against the first mortgagee and foreclose on that Claim of Lien for amounts reduced by the Safe Harbor Provision. Even in this worst case scenario for the association, the claim is not wholly unsecured. In the even that the first mortgagee does not take title through their foreclosure action, i.e., a third party purchases the property at the auction, the entire association debt would be secured by its lien. Florida Courts have also held that the statute "clearly indicates that the lien survives foreclosure." *Aventura Management, LLC v. Spiaggia Ocean Condo. Ass'n, Inc.*, 105 So. 3d 637, 639 (Fla. Dist. Ct. App. 2013). Therefore, Association's lien is not wholly unsecured, has priority over the first mortgage, and should not be "stripped off."

### *ANTIMODIFICATION PROVISION PREVENTS STRIPPING-OFF ASSOCIATION'S LIEN*

Moreover, in the instant case, the Association's claims are solely secured by the security interest in the debtor's homestead property. Pursuant to 11 U.S.C. §1322(b)(2) (the "Antimodification Provision"), a chapter 13 plan may not modify the *rights* of a secured creditor, whose claims are secured solely by the debtor's homestead property. A condominium

association's lien is not wholly unsecured and, in the worst case, it is at least undersecured in the amount lesser of 1% or 12 months of unpaid assessments.  *§718.116(1)(b)1., Fla. Stat.*  In this matter the Association's claim is secured only by a security interest in the debtor's principal residence.  *11 U.S.C. §1322(b)(2)*.  The Association has the right to foreclose on the property for pre-petition unpaid assessments if and when the debtor transfers the property to another.  However, if the lien for pre-petition unpaid assessments is stripped, it in effect modifies and eliminates the Association's rights to enforce its statutory rights to collect its assessments.  Therefore, the Court should not allow the Association's rights secured solely by the debtor's homestead by property be modified by stripping the lien for unpaid assessments.

## ARGUMENT

### *INTRODUCTION*

Generally, the determination of priority of liens is a matter of state law.  *See Butner v. United States*, 440 U.S. 48, 99 (1978).  Even though certain circumstances require application of federal law in determining lien priority, the priority between the first mortgage and the Association's lien for unpaid assessments does not come within the purview of such exceptions to the general rule.  *See, e.g.*, *In re McTyre Grading & Pipe, Inc.*, 193 B.R. 983, 186 (N.D. Ga. 1996) (stating priority of federal tax lien is a matter of federal law); *Cropper Co. v. Jackson*, 63 B.R. 874, 876 (M.D. Ga. 1986) (stating priority of liens are determined under 11 U.S.C. § 724(b) for the treatment of claims for Chapter 7 cases, regardless of their priority under state law).

It is established that the debt for unpaid condominium assessments is a secured credit.  *See generally*, *In Re Beckley*, 210 BR 391, 393 (M.D. Fla. 1997) ("A 'security interest' is defined as an agreement that creates or provides for a security interest.") (citing 11 U.S.C. §101(51)).  Under 11 U.S.C. §506(a), a creditor's claim "is a secured claim to the extent of the value of such

creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim." *See also, In re Armstrong*, No. 10-cv-1316-Orl-31, 2011 WL 768080, at *2, (M.D. Fla. Feb. 28, 2011). The treatment of a junior lien on homestead property is also governed by 11 U.S.C. §1322(b)(2), which prevents modification of the rights of the creditor whose claims are "secured only by security interest in real property that is the debtor's primary residence." *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 332 (1993). If a senior lien on homestead property exceeds the value of the property, a junior lien can be "stripped off" and be left as a wholly unsecured claim. *In re Gilpin*, 479 B.R. 905, 907 (M.D. Fla. 2011); *In re Plummer*, 484 B.R. 882 (Bankr. M.D. Fla. 2013). However, a wholly or partially secured claim on homestead property may not be "stripped off" or "stripped down." *Id. See also In re Tanner*, 217 F.3d 1357, 1360 (11th Cir. 2000).

"In order for Association to prevent its condominium assessment lien from being "stripped off," a determination must be made that the Claim of Lien is either entirely secured or undersecured." [Doc. 2-7, p. 3]

### *ASSOCIATION'S LIEN HAS PRIORITY OVER THE FIRST MORTGAGE*

The Association relies on *Spiaggia*, 105 So. 3d at 639, for the proposition that Association's statutory lien is in fact fully secured and even survives the foreclosure of a first mortgage. In *Spiaggia*, the Court held that "[section 718.116(1), Florida Statutes,] clearly indicates that the lien survives a foreclosure." *Id.* Even the dissent recognizes "that [a condominium association's] statutory lien, afforded by section 718.116(5)(a), Florida Statutes (2008), 'survives the foreclosure.'" *Id.*, at 640.

Section 718.116(1)(a), Florida Statutes states:

6

> A unit owner, regardless of how his or her title has been acquired, including by purchase at a foreclosure sale or by deed in lieu of foreclosure, is liable for all assessments which come due while he or she is the unit owner. Additionally, a unit owner is jointly and severally liable with the previous owner for all unpaid assessments that came due up to the time of transfer of title.

Further, section 718.116(5)(a), Florida Statutes, provides that:

> The association has a lien on each condominium parcel to secure the payment of assessments. Except as otherwise provided in subsection (1) and as set forth below, the lien is effective from and shall relate back to the recording of the original declaration of condominium, or, in the case of lien on a parcel located in a phase condominium, the last to occur of the recording of the original declaration or amendment thereto creating the parcel. However, as to first mortgages of record, the lien is effective from and after recording of a claim of lien in the public records of the county in which the condominium parcel is located.

A junior mortgage is foreclosed by a first mortgagee's foreclosure and becomes only a personal obligation of the mortgagor and unenforceable against the property or the subsequent owner of the property. However, the Association holds a lien against the subject property which is fully enforceable against the property even after foreclosure sale or deed in lieu of foreclosure.

The only exceptions to the general rule are provided in section 718.116(1)(b), Florida Statutes. Section 718.116(1)(b)1., Florida Statutes, provides that a first mortgagee or a subsequent holder of the first mortgage who acquires title to a condominium unit is only liable for 1% of the mortgage debt or 12 months of past due assessments, whichever is less. *§§718.116(1)(b)1; 718.116(1)(g), Fla. Stat.* Even after a foreclosure sale, a condominium can enforce its lien for unpaid assessments against the property if the purchaser fails to pay the statutory amounts due within 30 days. *§718.116(1)(c), Fla. Stat.*

> The person acquiring title shall pay the amount owed to the association within 30 days after transfer of title. Failure to pay the full amount when due shall entitle the association to record a claim of lien against the parcel and proceed in the same manner as provided in this section for the collection of unpaid assessments.

*Id.*

The reasoning in *In re Gonzales*, No. 07-14968-BKC-AJC, 2010 WL 1571172 (Bankr. S.D. Fla. Apr. 20, 2010), is inapplicable in light of the above quoted statutory provisions and their interpretation in light of *Spiaggia*.  In *Gonzales,* the court granted a motion to value and determine secured status of a Claim of Lien for condominium assessments solely based on the bank's responsibility to pay Association the statutory minimum of 1% of the original mortgage debt or 12 months of past due assessments.  In that case, the court reasoned that "a condominium association's right to be paid under Florida Statute 718.116 cannot be completely avoided because a portion of what is owed to the association in unpaid assessments is *part of the secured claim of the first mortgagee*." *Id*. at *3 (emphasis added).  However, the Association's right to be paid is not simply a party of the first mortgagee's secured claim, it is a security interest against the property that survives a foreclosure sale. *See, Spiaggia*, 105 So. 3d at 639, 640.  As the Association asserts, the decision was only based on the Safe Harbor provision–a situation where the first mortgagee becomes subsequent owner of the subject property.

It is more likely that the property may be sold at an arm's length sale, a short sale, or a third party purchaser may acquire title at a foreclosure sale.  In all such instances, Association is entitled to full satisfaction of its lien, and the payment of all unpaid assessment that came due prior to the subsequent owners' acquisition of title.

The Bankruptcy Court found that provisions of section 718.116(1), Florida Statutes, do not give a condominium association lien rights against a first mortgagee stating that "[The Statute] merely gives it the right to assert liability for past-due assessments against the mortgage holder if the mortgage holder acquires title through foreclosure." [Doc. 2-7, pp. 6-7] (citing In re Plummer, 484 B.R. 882, 888 (Bankr. M.D. Fla. 2013)).  Moreover, the Court reasoned "the [association's] Claim of Lien is junior to the first mortgagee's lien because it was recorded after

8

the first mortgage." [Doc. 2-7, p. 4] However, this argument should not be controlling in light of the interpretation of section 718.116, Florida Statutes, by Florida state courts. *See Spaiggia*, 105 So. 3d at 639, 640. As noted above a condominium association holds a security interest whether or not a Claim of Lien is of record. *See, In re Beckley*, 210 B.R. at 393. Even if the Association's recorded Claim of Lien is not *superior* to a first mortgage lien, Association's statutory continuing lien for unpaid assessments, which relates back to the recording of the declaration, is not inferior to that of the first mortgage. This is so because, unlike any other junior security interest on property, Association may exercise its lien rights—relating to unpaid assessments that came due prior to the foreclosure of a first mortgage—after the foreclosure of the first mortgagee's lien. Therefore, the Association's lien on the subject property is not a junior interest that can be valued. Moreover, in relying on the first mortgagee's liability under section 718.116(1)(b)1., Florida Statutes, the Court is speculating that the first mortgagee will be the purchaser at a hypothetical foreclosure sale and forecloses on the greater possibility that a third party purchaser would be the subsequent owner who takes subject to the Association's lien for unpaid assessments that was already delinquent prior to the foreclosure judgment.

Therefore, the court erred in determining that the Association's lien is wholly unsecured and "stripping off" the Association's secured interest in a chapter 13 valuation.

### *STRIPPING OFF ASSOCIATION'S LIEN IS CONTRARY TO THE ANTIMODIFICATION*

As discussed above, Association's claim is, in the least, partially secured, and it is secured only by the debtor's principal residence. Stripping the Association's lien against the property impairs the Association's state law right to enforce its lien for past due assessments from a third-party purchaser of the subject property other than the first mortgagee. However, 11 U.S.C. §1322(b)(2) prohibits the modification of rights of a creditor, whose claims are "secured only by a security interest in real property that is the debtor's principal residence." Therefore,

9

under the antimodicification provision, the Debtor may not "strip off" or "strip down" the Association's lien. *See Nobelman*, 508 U.S. 324, 113 (1993). When the Bankruptcy Court granted the Debtor's Motion to Value and Determine Secured Status of the Lien on Real Property held by the Association, upon discharge of the debtor, the Association's ability to exercise its statutory lien rights against a subsequent purchaser for the pre-petition unpaid assessments was forever foreclosed.

The Bankruptcy Court did not even reach this contention as the court had reached the conclusion that Association's lien is wholly unsecured. [Doc. 2-7, p. 5]. If a secured creditor is at least partially secured, it is "still a 'holder' of a 'secured claim'" and "the antimodification protection afforded by section 1322(b)(2) applies." *In re Tanner*, 217 F.3d at 1359 (citing Nobelman, 508 U.S. at 329). Because the Association's lien survives a foreclosure and because the Association's lien can be enforced against a subsequent owner after the foreclosure sale the Association's lien is at least partially secured. As such, the Association's lien rights are protected by the antimodification provision and cannot be "stripped off" or "stripped down." *Tanner* court argued that "[a]n analysis of the state law "rights" afforded a holder of an unsecured "lien," if such a situation exists, indicates these rights are empty rights from a practical, if not a legal, standpoint. A forced sale of the property would not result in any financial return to the lienholder, even if a forced sale could be accomplished where the lien attaches to nothing." *Id.* at 1360. This argument supports the Association's contention that the Association's lien rights should be upheld and be granted the protection of the antimodification provision. As shown above, the Association has rights after a forced sale of the property. It can enforce its lien rights against a subsequent owner of the property; foreclose on the property for

assessments due prior to First Mortgagee's foreclosure sale. Therefore, the Association's rights are not a nullity—which it would have been if it was junior and subordinate to the first mortgage.

Therefore, the court erred in modifying the rights of the Association, who is a secured creditor whose claims are secured only by a security interest in real property that is the Debtor's principal residence.

### *PUBLIC POLICY SUPPORTS ANTIMODIFICATION*

A condominium association provides essential services to a community such as maintenance of the condominium building, maintenance and repair of the common roof, common walls, and is engaged in the provision of essential amenities such as electricity for the common corridors, elevators, walk ways, parking, and provide a variety of services to the common welfare of the residents. The Association in this situation has expended great amounts of money in the restoration of the condominium building after Hurricane Wilma and is in the process of paying off the Small Business Association loan. Any equity in the property is upheld by the Association's provision of these essential services. The condominium assessments are the only method of income to these not-for-profit corporations run by volunteer board members.

The non-payment of assessments burdens the condominium and the community by increasing the other non-defaulting unit owners' liability for assessments and forcing the Association and the community into distress and even insolvency.

As such, allowing debtors in bankruptcy to avoid the payment of past due assessments via the vehicle of valuing and determining secured status of the lien held by a condominium association is patently unfair while the debtor in bankruptcy and the first mortgagee reap the benefits of all the services provided by the condominium association.

Moreover, a debtor in Chapter 7 bankruptcy does not enjoy such liberties with respect to a condominium lien. *In re Waters*, 248 B.R. 916, 919 (Bankr. M.D. Fla. 2000). The Chapter 7 debtor must either retain and reaffirm the debt or surrender the property. However, a Chapter 13 debtor is allowed to retain the condominium unit and avoid payment of any pre-petition assessments that supported and enhanced the equity in the property so valued.

Therefore, a debtor in chapter 13 bankruptcy should not be allowed to avoid payment of the pre-petition past due assessments.

## CONCLUSION

A condominium association debt survives a first mortgage foreclosure to some extent in all circumstances. In the worst case, the surviving debt is limited by the Safe Harbor Provision and in the best the entire past due balance survives; however, in either case, the association may place a Claim of Lien upon the property for the amount owed. Therefore, the Association requests that this Court hold that under Florida law, a condominium association's lien for unpaid assessments is not a wholly unsecured claim and hold that the lien rights cannot be "stripped-off" by mere valuation of the property against the value of the first mortgagee's secured claim. Furthermore, the Association prays that the Court hold that the antimodification provision prohibits the valuation of a condominium association's lien for unpaid assessments against a debtor's principal residence. For these reasons the Association prays that the Court reverse the Bankruptcy Court's order granting Debtor's Motion to Value and Determine Secured Status of Lien on Real Property and Denying Creditor's Objection to Motion to Value [doc 2-7]..

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 24th day of June, 2013, I electronically filed the foregoing document with the Clerk of Courts using CM/ECF.  I also certify that the foregoing document is being served on all counsel of record or pro se parties identified on the attached service list, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Filing.

        PeytonBolin, PL
        4758 West Commercial Boulevard
        Fort Lauderdale, Florida 33319
        Telephone: (954) 316-1339
        Facsimile: (954) 727-5667
        Email:  gian@peytonbolin.com
                bankruptcy@peytonbolin.com


By:   /s/ Gian Ratnapala
     Gian Ratnapala
     Florida Bar No. 97342

**SERVICE LIST**

<u>SERVED VIA CM/ECF NOTICE</u>:

Manny Singh, Esq.
Attorney for Debtor
6610 North University Drive, Suite 220
Tamarac, Florida 33201


<u>SERVED VIA U.S. MAIL</u>:

Kenneth W. Lockwood, Esq.
Douglas C Zahm, P.A.
Attorney for Creditor HSBC
12425 28th Street North, Suite 200
St. Petersburg, Florida 33716

Robin R. Weiner, Trustee
P.O. Box 559007
Fort Lauderdale, Florida 33355-9007

Office of the U.S. Trustee
51 Southwest 1st Avenue, Suite 1204
Miami, Florida 33130

Calvary Portfolio Services, LLC
500 Summit Lake Drive, Suite 400
Valhalla, New York 10595

Household Finance Corp III
636 Grand Regency Boulevard
Brandon, Florida 33510

Jefferson Capital Systems, LLC
P.O. Box 7999
Saint Could, Minnesota 56302