UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-61280-CIV-ROSENBAUM

STONEBRIDGE GARDENS SECTION
TWO, CONDOMINIUM ASSOCIATION,
INC.,

    Appellant,

v.

LEROY A. CAMPBELL,

    Appellee.
_____/

**OPINION AND ORDER**

    This is an appeal by Appellant Stonebridge Gardens Section Two, Condominium Association, Inc. ("Stonebridge"), of the Order Granting Motion to Value and Determine Secured Status of Lien of Real Property and Denying Creditor's Objection to Motion to Value entered on March 13, 2013 [BKC ECF No. 51],[1] in the United States Bankruptcy Court for the Southern District of Florida ("Bankruptcy Court"). The Court has carefully considered the briefs and all supporting and opposing filings and is otherwise fully advised in the premises. For the reasons set forth below, the Court affirms the Bankruptcy Court's Order.

**I. Background**

    Appellee Leroy A. Campbell is the debtor in the underlying bankruptcy proceeding. Schedule A of Campbell's bankruptcy petition lists his homestead property, which is valued at $27,500. The property is encumbered by a purchase-money mortgage in favor of HSBC Bank USA

---

[1] For purposes of clarity, documents filed in this docket, 13-61280–RSR, will be cited as "ECF No.\_\_\_\_", and documents filed in the underlying bankruptcy docket, 12-35903–JKO, will be cited as "BKC ECF No.\_\_\_\_."

as Trustee for Citigroup Mortgage Loan Trust, Inc. ("First Morgagee"), in the amount of $74,785.03. The First Mortgagee's lien was recorded on June 18, 1998. Appellant Stonebridge subsequently filed a claim of lien against the property on August 29, 2011, as a result of Campbell's non-payment of past-due condominium assessments, which total $22,147.23.

In the bankruptcy litigation, Campbell filed a Motion to Value and Determine Secured Status of Lien on Real Property, arguing that Stonebridge's lien could be "stripped off" under the Bankruptcy Code. The Bankruptcy Court granted Campbell's Motion, concluding that the First Mortgagee's lien exceeded the value of the property at issue, and because Stonebridge's lien was junior to that of the First Mortgagee, Stonebridge's claim of lien was wholly unsecured and could be "stripped off" pursuant to 11 U.S.C. § 506(d). Stonebridge appeals that determination.

## II. Jurisdiction

Federal courts are courts of limited jurisdiction. *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir.2003). With regard to appeals from bankruptcy courts, district courts enjoy jurisdiction over only three types of orders: (1) final orders, as described in 28 U.S.C. § 158(a)(1); (2) interlocutory appeals issued under 11 U.S.C. § 1121(d), as described in 28 U.S.C. § 158(a)(2); and, (3) with leave of the court, other interlocutory orders, as described in 28 U.S.C. § 158(a)(3) and Rule 8001(b), Fed. R. Bankr. P. *Tobkin v. Calderin*, No. 12–22692–MC, 2012 WL 3609867, at *1 (S.D.Fla. Aug. 22, 2012).

Here, Stonebridge appears to seek review under 28 U.S.C. § 158(a)(1). The parties do not dispute jurisdiction, and the Court agrees that it enjoys jurisdiction over this appeal.

### III. Standard of Review

Bankruptcy courts are governed by the Federal Rules of Bankruptcy Procedure. Under Rule 8013, Fed. R. Bankr.P., a district court reviews the factual findings of a bankruptcy court for clear error. Under this deferential standard, the lower court's findings of fact shall stand unless the reviewing court is left with the "definite and firm impression that a mistake has been made." *Am. Nat'l Bank of Jacksonville v. Fed. Deposit Ins. Corp.*, 710 F.2d 1528, 1534 (11th Cir. 1983) (citing *Morgado v. Birmingham-Jefferson Cnty. Civil Def. Corp.*, 706 F.2d 1184 (11th Cir. 1983)). As for the conclusions of law of the bankruptcy court and the application of the law to the particular facts of the case, a district court must conduct a de novo review. *See In re Feingold*, 474 B.R. 293, 294 (S.D. Fla. 2012) (citing *In re Globe Mfg. Corp.*, 567 F.3d 1291, 1296 (11th Cir. 2009)); *In re Club Assocs.*, 951 F.2d 1223, 1228–29 (11th Cir. 1992) ("The Court reviews the Bankruptcy Court's factual findings for clear error and its legal conclusions de novo.").

### IV. Discussion

#### A. Stonebridge's Claim of Lien is Subordinate

The crux of Stonebridge's argument is that its claim of lien is not subordinate to that of the First Mortgagee, and therefore, is not wholly unsecured. In the underlying Order, the Bankruptcy Court determined that the first mortgage was superior under § 718.116, Fla. Stat. Under subsection (5) of the statute, a condominium association has a lien on each condominium parcel to secure the payment of assessments. In general, the lien relates back to the recording of the original declaration of condominium, but with respect to first mortgages of record, the "lien is effective from and after recording of a claim of lien." Here, the First Mortgagee's lien was recorded on June 18, 1998. Stonebridge's association lien was recorded on August 29, 2011. Because the association's claim

of lien was recorded after that of the First Mortgagee, the Bankruptcy Court determined that the First Mortgagee had priority status.

Stonebridge nonetheless posits that its lien is not truly subordinate because the statute allows its lien to survive foreclosure. In support of this contention, Stonebridge cites to § 718.116(1)(a), Fla. Stat,. which provides that a "unit owner is jointly and severally liable with the previous owner for all unpaid assessment that came due up to the time of transfer of title." Because an association's right to assessment payments survives sale of the condominium though foreclosure, Stonebridge maintains that its lien is superior.

The Court respectfully disagrees. While Stonebridge is correct that subsequent purchasers—regardless of how title has been acquired—remain liable for unpaid assessments of the unit's prior owner, nothing in the statute indicates that the association's lien attains priority status in bankruptcy. Indeed, the fact the Florida statute carves out a specific exception for first mortgages belies the notion that the association's claim of lien was intended to be superior. *See In re Plummer*, 484 B.R. 882, 888 (Bankr. M.D. 2013) ("[S]ection 718.116(5)(a) specifically provides the holder of a first mortgage with priority over a lien for assessments unless the mortgage is recorded after the recording of the claim of lien."). Moreover, in the foreclosure context, Florida courts have consistently held that association assessment liens do not generally have priority over a prior-recorded mortgage. *See, e.g.*, *LR5A-JV, LP v. Little House, LLC*, 998 So. 2d 1173, 1175 (5th DCA 2008) (noting that "nothing in the plain language of [the statute] can reasonably be construed to give the Association's lien priority over LR5A-JV's mortgage."); *Fed. Nat'l Mortgage Ass'n v. McKesson*, 639 So. 2d 78, 80 (Fla. 4th DCA 1994) ("[I]n the absence of clear language giving a homeowners' association a lien that relates back to previously recorded documents, the priority

should be determined according to the well-established rule in the recording statute of 'first in time is first in right.'").

Despite Stonebridge's insistence that its lien is not subordinate to the first mortgage, it has cited nothing that convinces the Court that a contrary conclusion is supported by law.  While Stonebridge correctly emphasizes that priority of liens is governed by state law, and in Florida, the applicable rule governing priority of lien interests is "first in time is first in right," *see Holly Lake Ass'n v. Fed. Nat'l Mortg. Ass'n*, 660 So. 2d 266, 268 (Fla. 1995), the state statute governing association assessments does not alter this general maxim.  Although the statute allows a condominium association to hold subsequent purchasers liable for past-due assessments, including a first mortgagee if it acquires title through foreclosure, it does not give the association priority lien rights.  Significantly, once title is transferred, the association must record a new claim of lien if the person to whom title was transferred fails to pay the past-due assessment within thirty days.  Fla. Stat. § 718.116(1)(c).[2]  Thus, although the association preserves its right to payment, it does not necessarily acquire a superior lien.  Here, it is undisputed that the First Mortgagee's lien was recorded thirteen years before Stonebridge's claim of lien.  As a result, the Bankruptcy Court correctly concluded that the First Mortgagee's claim was superior.

---

[2] The subsection provides,
> The person acquiring title shall pay the amount owed to the association within 30 days after transfer of title. Failure to pay the full amount when due shall entitle the association to record a claim of lien against the parcel *and proceed in the same manner as provided in this section for the collection of unpaid assessments*.

Fla. Stat. § 718.116(1)(c) (emphasis added).

### B. Stonebridge's Lien is Wholly Unsecured

11 U.S.C. § 506(a) determines the secured status of a creditor's claim. In particular, the statute provides that a "claim is secured only to the extent of the value of the property on which the lien is fixed; the remainder of the claim is considered unsecured." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 239 (1989). In this regard, the extent to which a junior creditor holds a secured claim is determined by first deducting the amount of debt secured by senior liens from the value of the property. *See In re Armstrong*, No. 6:10–cv–1316, 2011 WL 768080, at *2 (M.D. Fla. Feb. 28, 2011).

The property at issue here has an undisputed valuation of $27,500.00. The First Mortgagee's lien, which amounts to $74,785.03, far exceeds the value of the property. As a result, Stonebridge's claim is wholly unsecured.[3]

### C. Stonebridge's Claim May Be "Stripped Off"

Finally, a Chapter 13 debtor is permitted to "modify the rights of holders of secured claims," but it may not do so if the creditor's claim is "secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2). Although this anti-modification provision prohibits debtors from modifying even partially secured claims, the Eleventh Circuit has held that *wholly unsecured* claims are not protected from modification. *In re Tanner*, 217 F.3d 1357, 1360 (11th Cir. 2000) ("[O]nly rights secured by some remaining equity will be protected from modification."). Thus, a lien that is completely unsecured may be "stripped off."

---

[3] Stonebridge's contention that it remains a secured lienholder is premised on its previous argument that it retained priority status by virtue of the condominium statute. But, for the reasons previously discussed, this argument cannot succeed, and this Court agrees with the Bankruptcy Court's determination that Stonebridge's claim of lien is junior to that of the First Mortgagee.

As noted above, Stonebridge's claim of lien is wholly unsecured because the value of the property is less than the value of indebtedness secured by the first mortgage. Thus, the Bankruptcy Court did not err in stripping off Stonebridge's lien.

### V. Conclusion

For the foregoing reasons, the Bankruptcy Court's Order is **AFFIRMED**, and Stonebridge's appeal is **DENIED.** The Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** at the Fort Lauderdale, Florida, this 21st day of January 2014.

_____
ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

copies:
Counsel of Record